**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X          **Docket No.:**
TASHA CLARKE,

                Plaintiff,

                                **COMPLAINT**

      -against-

GUARDIAN SERVICE INDUSTRIES, INC.,          **PLAINTIFF DEMANDS**
MICHAEL RONAN, *In His Individual and*          **A TRIAL BY JURY**
*Official Capacities*,

                Defendants.
-------------------------------------------------------------X

     PLAINTIFF TASHA CLARKE, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys

at Law, PLLC, hereby complains of the DEFENDANTS, upon information and belief as follows:

<u>**NATURE OF THE CASE**</u>

1.    PLAINTIFF TASHA CLARKE complains pursuant to the <u>Americans with Disabilities Act</u>

     <u>of 1990</u>, <u>42 U.S.C</u>. §§ 12101, *et seq*. ("<u>ADA</u>"); the <u>New York State Human Rights Law</u>,

     <u>NYS Executive Law</u> §§ 296, *et seq*. ("<u>NYSHRL</u>"); and the <u>New York City Human Rights</u>

     <u>Law</u>, <u>New York City Administrative Code</u> §§ 8-107, *et seq*. ("<u>NYCHRL</u>"); and seeks

     damages to redress the injuries PLAINTIFF suffered as a result of being **<u>discriminated</u>**

     and **<u>retaliated</u>** against on the basis of her **disabilities (actual or perceived)** and due to her

     **status as a caretaker of a person with disabilities**.

2.    PLAINTIFF TASHA CLARKE was/is employed by **DEFENDANT GUARDIAN**

     **SERVICE INDUSTRIES, INC.** as a "Dispatcher," for over two months – from on or

     about November 1, 2021 until she was (wrongfully and unlawfully) taken off the schedule

     on or about December 30, 2021.

3.    PLAINTIFF TASHA CLARKE suffers from various disabilities (including Anxiety

     Disorder and Depression) since the age of around fourteen (14).

4.      On or about December 3, 2021, PLAINTIFF TASHA CLARKE informed her manager, DEFENDANT MICHAEL RONAN, that she had disabilities and advised him what said disabilities were, and also disclosed that her son was starting to exhibit similar symptoms. PLAINTIFF advised that she needed the day off to try to address her son's condition and to get him medical help.

5.      PLAINTIFF TASHA CLARKE was thereby placing DEFENDANTS on notice of her disabilities and was requesting a reasonable accommodation due to her disabilities and/or caretaker responsibilities.

6.      Soon thereafter, GUARDIAN DEFENDANTS began treating PLAINTIFF TASHA CLARKE differently from her similarly situated colleagues, who did not have similar disabilities.

7.      GUARDIAN DEFENDANTS then subjected PLAINTIFF to adverse employment action(s), removed PLAINTIFF TASHA CLARKE from the schedule in her role as "dispatcher" and informed PLAINTIFF that she was being demoted to the role of "concierge" – specifically because her disabilities and condition of her son (as described to DEFENDANT RONAN) would be too much for her to deal with while working as a dispatcher.

8.      As of the date of this Complaint, GUARDIAN DEFENDANTS have yet to reassign PLAINTIFF TASHA CLARKE to the new concierge position, and thereby effectively suspended and/or terminated PLAINTIFF TASHA CLARKE.

9.      GUARDIAN DEFENDANTS did not engage in any interactive process or cooperative dialogue, which are required under the laws cited herein. GUARDIAN DEFENDANTS immediately took PLAINTIFF TASHA CLARKE off the work schedule and subjected her to adverse employment action(s) due to actual or perceived disabilities, and her caretaker

responsibilities.

10.    GUARDIAN DEFENDANTS callously discriminated and retaliated against PLAINTIFF

TASHA CLARKE, wrongfully terminated, suspended and demoted her due to her status

as a caretaker of a person with disabilities, due to her own disabilities, whether actual

and/or perceived, and/or due to her need and request for a reasonable accommodation, in

violation of Federal, State, and City laws asserted herein.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

11.    Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. §§ 12101,

*et seq*., and 28 U.S.C. §§ 1331 and 1343.

12.    The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought

under state and city law pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more

DEFENDANTS reside within the Southern District of New York or the acts complained

of occurred therein.

14.    By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on or about April 19, 2022; (b) receiving a Notice of Right to Sue

from the EEOC on March 16, 2023; (c) commencing this action within 90 days of the

issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the

filing of this Complaint, mailing copies thereof to the New York City Commission of

Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New

York pursuant to the notice requirements of § 8-502 of the New York City Administrative

Code, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement

of the instant action.

15.    A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

**PARTIES**

16.   At all times relevant hereto, **PLAINTIFF TASHA CLARKE ("PLAINTIFF CLARKE")** is a 38-year-old African American female and a resident of New York, New York. PLAINTIFF CLARKE was employed by DEFENDANT GUARDIAN SERVICE INDUSTRIES, INC. as a "Dispatcher" from on or about November 1, 2021 until on or about December 30, 2021. Since in or around the age of Fourteen (14), PLAINTIFF CLARKE has been suffering disabilities, including but not limited to anxiety and depression.

17.   Since in or around December 2021, PLAINTIFF CLARKE'S son began to exhibit signs of anxiety and depression.

18.   **DEFENDANT GUARDIAN SERVICE INDUSTRIES, INC. (hereinafter, "DEFENDANT GUARDIAN")** is a Domestic Business Corporation that exists under the laws of the State of New York, with a principal executive office address at 55 Water Street, New York, New York 10041. **DEFENDANT GUARDIAN** provides janitorial, security, and other services for residential and commercial buildings.

19.   Upon information and belief, **DEFENDANT GUARDIAN** owns and/or operates a location at 55 Water Street, New York, New York 10041, where the discriminatory conduct took place.

20.   **DEFENDANT GUARDIAN** employs well-more than 15 employees.

21.   **DEFENDANT MICHAEL RONAN (hereinafter, "DEFENDANT RONAN")** is a "Dispatch Office Manager" at **DEFENDANT GUARDIAN**. At all times, **DEFENDANT RONAN** had the authority to hire, fire, and/or affect the terms and conditions of **PLAINTIFF CLARKE'S** employment. **DEFENDANT RONAN** is being sued herein in his individual and official capacities.

22.    **DEFENDANT   GERARD   MCGARRITY   (hereinafter   "DEFENDANT MCGARRITY"),** is/was an Operations Manager and/or the Director of Operations at DEFENDANT GUARDIAN. In his position, **DEFENDANT MCGARRITY** had the authority to hire, fire, and/or affect the terms and conditions of **PLAINTIFF CLARKE'S** employment. **DEFENDANT MCGARRITY** is being sued herein in his individual and official capacities.

23.    **DEFENDANTS, GUARDIAN, RONAN AND MCGARRITY,** are collectively referred to herein as "**GUARDIAN DEFENDANTS**."

<u>**MATERIAL FACTS**</u>

24.    On or about Monday, November 1, 2021, PLAINTIFF CLARKE began training with DEFENDANT GUARDIAN as a "Security Dispatcher."

25.    At all times relevant, PLAINTIFF CLARKE worked from Wednesday to Sunday from 2 PM to 10 PM and worked an average of 40 hours per week at a rate of $19.00 per hour.

26.    PLAINTIFF CLARKE had an expected 2022 annual income of $39,520.00, plus the value of the benefits she expected to receive upon completing her probationary period, which included but were not limited to: Medical Insurance, Dental Insurance, Life Insurance, Transportation Reimbursements, and 401k.

27.    PLAINTIFF CLARKE was qualified for her position and performed her duties in an above-satisfactory manner at all times relevant to her employment with DEFENDANT GUARDIAN.

28.    On or about Monday, November 1, 2021, during her training, DEFENDANT RONAN told PLAINTIFF CLARKE, that she would be trained as a "dispatcher," but could also earn overtime by working as a "concierge."

29.    However, PLAINTIFF CLARKE never worked as a "concierge" and was not hired for that

position.

30.    On or about Wednesday, November 3, 2021, PLAINTIFF CLARKE worked alone.

31.    Upon information and belief, PLAINTIFF CLARKE was able to execute her job duties
       with no issues.

32.    On or about Friday, November 5, 2021, PLAINTIFF CLARKE was given her official job
       offer.

33.    On or about Saturday, November 13, 2021, PLAINTIFF CLARKE initially intended to
       work from home, but after not being able to gain access to vital work emails, went into the
       office to work.

34.    On or about Wednesday, November 17, 2021, PLAINTIFF CLARKE explained to
       DEFENDANT RONAN and Stefany Fernandez ("Ms. Fernandez"), Head Dispatcher, that
       she (PLAINTIFF CLARKE) had trouble logging into DEFENDANT GUARDIAN'S
       network for her emails.

35.    DEFENDANT RONAN helped PLAINTIFF CLARKE set up her iPad to gain access to
       information she (PLAINTIFF CLARKE) needed for work.

36.    On or about Thursday, November 25, 2021, PLAINTIFF CLARKE was working from
       home, as it was the Thanksgiving Holiday.

37.    On this day (11/25/2021), at the time of the end of her shift, PLAINTIFF contacted Nancy
       Ortiz ("Ms. Ortiz"), Dispatcher, in the normal course to announce that her shift was over
       and to transfer responsibilities to the next shift.

38.    Ms. Ortiz became very irritate at PLAINTIFF CLARKE because Ms. Ortiz had to work a
       double shift on a holiday, and proceeded to hang up on PLAINTIFF CLARKE.

39.    Soon thereafter, Ms. Ortiz called PLAINTIFF CLARKE back (at or around 11:20 P.M.)
       and falsely accused her of not updating a Concierge about his schedule.

40. PLAINTIFF CLARKE informed Ms. Ortiz that she (PLAINTIFF CLARKE) did update the concierge with enough notice (at or around 6:30 p.m.).

41. Ms. Ortiz responded that PLAINTIFF CLARKE was lying and did not timely update the Concierge.

42. Later that day, Ms. Ortiz text messaged PLAINTIFF CLARKE about the previous conversation.

43. PLAINTIFF CLARKE apologized in order to defuse the situation.

44. On or about Friday, November 26, 2021, PLAINTIFF CLARKE went into the office for work.

45. At work, DEFENDANT RONAN called PLAINTIFF CLARKE and asked PLAINTIFF CLARKE if everything was okay during PLAINTIFF CLARKE'S last shift and if she (PLAINTIFF CLARKE) needed to come in for more training.

46. Confused, PLAINTIFF CLARKE responded that she did not require additional training.

47. Upon information and belief, Ms. Ortiz complained to DEFENDANT RONAN about the conversation with PLAINTIFF CLARKE the day prior.

48. DEFENDANT RONAN proceeded to ask PLAINTIFF CLARKE about her (PLAINTIFF CLARKE'S) interaction with Ms. Ortiz the night prior.

49. PLAINTIFF CLARKE explained to DEFENDANT RONAN that she received word of the concierge's schedule and location change during her shift and she was instructed by the supervisor to update him about same.

50. PLAINTIFF CLARKE continued that she reached out to the concierge, who she thought had an idea of his schedule change, but he became upset, angry, and belligerent about the change in his schedule before hanging up on PLAINTIFF CLARKE.

51. Later that day, PLAINTIFF CLARKE had an issue with another employee, who wished to

notify DEFENDANTS of his need for bereavement leave. PLAINTIFF notified
DEFENDANTS of the employees' need for bereavement leave via email, in the normal
course.

52.    However, PLAINTIFF CLARKE was informed by the employee that her email could not
be found.

53.    The above are the only issues (if any) that PLAINTIFF had in her dispatcher role.

54.    On or about Friday, December 3, 2021, PLAINTIFF CLARKE confided in, and informed,
DEFENDANT RONAN that her son was beginning exhibit signs of mental illness.

55.    At the time, PLAINTIFF CLARKE began crying to DEFENDANT RONAN because she
was very upset.

56.    During this conversation, PLAINTIFF CLARKE disclosed to DEFENDANT RONAN that
she suffers from anxiety and depression and began to notice the same symptoms of these
disabilities in her son.

57.    PLAINTIFF CLARKE then informed DEFENDANT RONAN that due to the nature of the
situation, she could not come into work because she had to take care of her son's medical
needs and needed to get him immediate medical help.

58.    PLAINTIFF CLARKE was thereby not only clearly notifying GUARDIAN
DEFENDANTS of her disabilities, whether actual and/or perceived, but also of her status
as a caregiver of a person with disabilities.

59.    PLAINTIFF CLARKE was clearly requesting a reasonable accommodation to attend to
her son and his medical issues.

60.    On or about Sunday, December 5, 2021, DEFENDANT RONAN informed PLAINTIFF
CLARKE that he did not tell DEFENDANT GUARDIAN about PLAINTIFF CLARKE'S
disabilities, nor did he inform GUARDIAN about her son's disabilities.

61.     According to DEFENDANT RONAN, he did not disclose her issues to HR because DEFENDANT GUARDIAN would be concerned about the disclosure and "*would treat*" PLAINTIFF CLARKE as if "*she was not able to perform her duties.*"

62.     DEFENDANT RONAN stated that he was not going to tell anyone about PLAINTIFF'S disclosures due to the stigma and backlash that people receive once their employers find out that they have a mental illness.

63.     DEFENDANT RONAN alleged that he would allow PLAINTIFF CLARKE to take days off as needed to help her son with his medical issues.

64.     As a manager that had responsibilities over subordinates (like PLAINTIFF CLARKE) DEFENDANT RONAN was not trained or supervised by his employer DEFENDANT GUARDIAN with regard to addressing disability issues and reasonable accommodations in the workplace.

65.     DEFENDANT RONAN was not trained or supervised by his employer DEFENDANT GUARDIAN with regard to recognizing requests for reasonable accommodations and when same is necessary to forward to HR or management for review.

66.     DEFENDANT RONAN was not trained or supervised by DEFENDANT GUARDIAN about interactive processes or cooperative dialogues, or when same would become necessary to conduct with an employee.

67.     DEFENDANT GUARDIAN did not train or instruct PLAINTIFF CLARKE with regard to how to seek reasonable accommodations.

68.     If DEFENDANT GUARDIAN did instruct DEFENDANT RONAN about employee disability issues and reasonable accommodations, DEFENDANT RONAN chose to willingly ignore same, to the detriment of PLAINTIFF CLARKE.

69.     When placed on clear actual and constructive notice that PLAINTIFF CLARKE had a

disability (and caretaker duties) that was affecting her ability to work, DEFENDANT RONAN did not engage in any interactive process with PLAINTIFF CLARKE, nor did DEFENDANT RONAN send PLAINTIFF CLARKE to the department or person(s) responsible for addressing disability concerns.

70. DEFENDANT GUARDIAN did not have a policy or procedure with regard to handling disability issues and/or reasonable accommodations.

71. If DEFENDANT GUARDIAN did have such policies, its managers were not trained or instructed about any such policy, to the detriment of PLAINTIFF CLARKE.

72. A few days later, on or about Wednesday, December 8, 2021, Dispatcher Nancy Ortiz text messaged GUARDIAN'S group chat about transitioning PLAINTIFF'S dispatcher shift/duties from PLAINTIFF CLARKE to Ms. Ortiz.

73. Thereafter, in between Wednesday, December 8, 2021 and Tuesday, December 14, 2021, PLAINTIFF CLARKE began to notice a shift in the way employees were treating her.

74. Upon information and belief, rather than address PLAINTIFF CLARKE'S disabilities with DEFENDANT GUARDIAN, DEFENDANT RONAN shared PLAINTIFF CLARKE'S confidential medical information with Ms. Ortiz and/or others in the workplace.

75. In or around the week of December 20, 2021, PLAINTIFF CLARKE and the members of her family/household all contracted COVID-19.

76. PLAINTIFF CLARKE attempted to continue working despite being ill, but was taken off her shift on or about Friday, December 24, 2021.

77. On or about Monday, December 27, 2021 and Tuesday, December 28, 2021, DEFENDANT RONAN notified the employees in GUARDIAN'S group chat that overtime would be available for anyone that needed it as a result of the increase in work and lack of staff.

78.  However, PLAINTIFF CLARKE was not offered overtime after she began to express her frustrations with the lack of support.

79.  On Thursday, December 30, 2021, DEFENDANT RONAN called PLAINTIFF CLARKE to set up a meeting to discuss work related issues related to the concierge.

80.  PLAINTIFF CLARKE informed DEFENDANT RONAN that she wanted to have a meeting with Ms. Ortiz and DEFENDANT RONAN to discuss workplace issues that were transpiring in dispatch.

81.  PLAINTIFF CLARKE continued that she was thinking about resigning from DEFENDANT GUARDIAN due to the ongoing hostile work environment being created by Ms. Ortiz after she disclosed her disabilities to RONAN.

82.  DEFENDANT RONAN said he would set up a meeting.

83.  Soon thereafter, DEFENDANT RONAN, thinking that he was text messaging Ms. Ortiz alone, but actually communicating in the group chat, told Ms. Ortiz to "***take it easy***" on PLAINTIFF CLARKE or PLAINTIFF CLARKE would "*go to human resources*" to complain.

84.  Upon seeing this, PLAINTIFF CLARKE panicked and immediately called DEFENDANT RONAN to ask him if she was being fired.

85.  DEFENDANT RONAN responded that PLAINTIFF was not going to be fired.

86.  However, DEFENDANT RONAN then stated that "***due to the high stress of the dispatcher position and [PLAINTIFF CLARKE'S] mental health, as well as her son's mental health issues, it would be better for PLAINTIFF CLARKE to work as a concierge instead of as a dispatcher***."

87.  DEFENDANT RONAN continued that Ms. Ortiz would be promoted to Human Resources and that PLAINTIFF CLARKE'S work was now (allegedly) affecting GUARDIAN'S

operations.

88.   In no uncertain terms, PLAINTIFF was told that her disabilities and caretaker issues were a problem to GUARDIAN.

89.   GUARDIAN DEFENDANTS made the determination that PLAINTIFF would be demoted to a concierge position after PLAINTIFF disclosed her disability and caretaker issues.

90.   GUARDIAN DEFENDANTS subjected PLAINTIFF to adverse employment actions due to her disabilities (actual or perceived) and/or her status as a caretaker of a person with disabilities.

91.   As a result, PLAINTIFF was demoted, suffered a change in title, change of duties and change in the terms and conditions of her employment, due to her disabilities, caretaker responsibilities and association with a person with disabilities.

92.   PLAINTIFF was deeply offended and began to fear for her employment as a result of the conduct of GUARDIAN DEFENDANTS.

93.   PLAINTIFF'S job title and schedule would not have been altered but for her disclosure of her disabilities, caretaker status and association with a person with disabilities.

94.   DEFENDANT'S adverse employment actions against PLAINTIFF were motivated, in whole or in part, by PLAINTIFF'S disabilities (actual or perceived), her caretaker issues and association with a person with disabilities.

95.   In or around the end of January 2022, GUARDIAN DEFENDANTS placed PLAINTIFF in a concierge position for 3 days per week.

96.   However, this position was materially different from PLAINTIFF'S position as a dispatcher, had lesser duties/responsibilities and was a demotion to PLAINTIFF.

97.   On or about February 1, 2022, PLAINTIFF CLARKE wrote a formal complaint regarding her situation and provided it to GUARDIAN DEFENDANTS.

98.   Specifically, PLAINTIFF complained to DEFENDANT GERARD MCGARRITY, Operations Manager and/or the Director of Operations at DEFENDANT GUARDIAN, regarding GUARDIAN DEFENDANTS' discriminatory conduct.

99.   PLAINTIFF sent this complaint to DEFENDANT MCGARRITY because PLAINTIFF did not trust that the complaint would be given consideration if sent to HR, wherein Ms. Ortiz worked.

100.  However, DEFENDANT MCGARRITY and/or GUARDIAN DEFENDANTS ignored PLAINTIFF'S complaint, effectively rendering PLAINTIFF CLARKE'S only internal avenue of recourse futile.

101.  Following PLAINTIFF'S complaint to DEFENDANT MCGARRITY, on or about February 15, 2022, suddenly, GUARDIAN DEFENDANTS further reduced PLAINTIFF'S work schedule as a Concierge from 3 days per week to 2 days per week.

102.  Upon information and belief, the further reduction of PLAINTIFF'S hours occurred in response to (and in retaliation for) PLANTIFF'S complaint to DEFENDANT MCGARRITY.

103.  Upon information and belief, DEFENDANTS were upset that PLAINTIFF complained about their discriminatory conduct to DEFENDANT MCGARRITY.

104.  This caused yet a further material difference in PLAINTIFF'S employment, including but not limited to PLAINTIFF'S weekly compensation.

105.  Indeed, PLAINTIFF was home for a prolonged period without work or without being placed on the schedule as a dispatcher either.

106.  PLAINTIFF would not have been put out of work but for the disclosure of her disabilities and caretaker responsibilities.

107.  PLAINTIFF would not be facing financial difficulties and hardship had she not disclosed

her disabilities, caretaker status and association with a disabled person.

108.    As a result, PLAINTIFF suffered extreme financial hardship.

109.    Though GUARDIAN did not tell PLAINTIFF that she was terminated, GUARDIAN DEFENDANTS' removal of PLAINTIFF from the schedule and failure to reassign PLAINTIFF was a termination.

110.    DEFENDANT GUARDIAN effectively terminated PLAINTIFF CLARKE because she requested reasonable accommodations for her disabilities and due to her caretaker responsibilities.

111.    DEFENDANT RONAN, as an individual in a supervisory and/or managerial authority, was acting pursuant to his position as an agent of DEFENDANT GUARDIAN, when he engaged in discriminatory conduct against PLAINTIFF.

112.    DEFENDANT GUARDIAN simply did not want to accommodate PLAINTIFF, when she advised DEFENDANTS of her and her son's medical disabilities.

113.    Without engaging in any interactive process or cooperative dialogue, DEFENDANTS made the summary determination that PLAINTIFF could not perform the duties of her employment due to her disabilities.

114.    DEFENDANTS had no good faith business justification for their conduct against PLAINTIFF.

115.    PLAINTIFF CLARKE could have performed the duties of her employment with or without a reasonable accommodation.

116.    DEFENDANT GUARDIAN did not engage in any "cooperative dialogue" with PLAINTIFF CLARKE to determine if PLAINTIFF CLARKE could be accommodated, as required by the New York City and State Human Rights Law(s).

117.    GUARDIAN DEFENDANTS did not attempt to determine if there existed any alternatives

to PLAINTIFF CLARKE'S requested accommodation, short of a demotion, title change and suspension/termination.

118.   GUARDIAN DEFENDANTS did not assess any purported difficulties/hardship that PLAINTIFF CLARKE'S accommodation request may have posed to the GUARDIAN DEFENDANTS.

119.   PLAINTIFF CLARKE'S requested accommodation would not have created an undue hardship for GUARDIAN DEFENDANTS.

120.   Indeed, GUARDIAN DEFENDANTS never sought to determine if PLAINTIFF CLARKE'S request would cause any undue hardship before summarily terminating or suspending PLAINTIFF CLARKE'S employment.

121.   DEFENDANT GUARDIAN made its determination to (wrongfully) terminate or suspend PLAINTIFF CLARKE without satisfying the requirements of the New York City Human Rights Law.

122.   Even if GUARDIAN DEFENDANTS could not provide the specific accommodation sought by PLAINTIFF CLARKE, GUARDIAN DEFENDANTS did not propose any reasonable alternatives to meet the specific needs of PLAINTIFF CLARKE – as is required by the NYC and NYS Human Rights Laws, or that specifically address the impairment at issue.

123.   GUARDIAN DEFENDANTS failed to consider PLAINTIFF CLARKE'S request(s) for time off and intentionally caused PLAINTIFF CLARKE'S demotion, suspension and termination.

124.   GUARDIAN DEFENDANTS retaliated against PLAINTIFF CLARKE for engaging in protected activity by wrongfully and unreasonably terminating and/or suspending her employment.

125.   GUARDIAN DEFENDANTS had no good faith business justification for terminating PLAINTIFF CLARKE'S employment; or for retaliating against PLAINTIFF CLARKE in the manner described herein.

126.   GUARDIAN DEFENDANTS callously removed PLAINTIFF from her employment for discriminatory and retaliatory reasons after PLAINTIFF CLARKE engaged in protected activity.

127.   Causation between PLAINTIFF CLARKE'S request(s) for reasonable accommodations, her complaints and then her wrongful suspension and/or termination is clear and absolute herein.

128.   To make matters worse, DEFENDANT GUARDIAN terminated PLAINTIFF CLARKE'S employment at a time that they knew that PLAINTIFF CLARKE needed her income and medical benefits in order to continue her and her son's medical treatments.

129.   Thus, GUARDIAN DEFENDANTS' actions against PLAINTIFF CLARKE were designed to cause PLAINTIFF CLARKE further emotional and physical harm.

130.   Thus, GUARDIAN DEFENDANTS' actions against PLAINTIFF CLARKE were of the type that would dissuade a reasonable person from seeking reasonable accommodation or disclosing disabilities at GUARDIAN.

131.   As a result of GUARDIAN DEFENDANTS' actions, PLAINTIFF CLARKE was caused to be emotionally distraught, depressed, anxious, jobless, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

132.   PLAINTIFF CLARKE also suffered a loss of income, loss of employment, loss of benefits, the loss of a salary/pay, loss of employment opportunities, inconvenience, special damages, loss of other compensation which such employment entails, and PLAINTIFF CLARKE has also suffered future pecuniary losses, emotional pain, suffering, inconvenience,

humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

133.   GUARDIAN DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

134.   As such, PLAINTIFF CLARKE demands Punitive Damages as against all GUARDIAN DEFENDANTS, jointly and severally.

**AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE AMERICANS WITH DISABILITIES ACT (*Against DEFENDANT GUARDIAN*)**

135.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

136.   PLAINTIFF asserts that DEFENDANT GUARDIAN violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended.

137.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

138.   The ADA also forbids discrimination against those due to their association with persons with disabilities and/or "associational discrimination."

139.   DEFENDANT GUARDIAN believed PLAINTIFF had a disability, whether actual and/or perceived, which required a reasonable accommodation.

140.   DEFENDANT GUARDIAN believed PLAINTIFF'S son had a disability, whether actual and/or perceived, which required a reasonable accommodation.

141.   PLAINTIFF would have been able to complete the duties of her job with or without

reasonable accommodation.

142. But for PLAINTIFF'S disabilities - whether actual and/or perceived - and/or perceived need for a reasonable accommodation, DEFENDANT GUARDIAN would not have wrongfully terminated or suspended her employment.

143. But for PLAINTIFF'S son's disabilities - whether actual and/or perceived - and/or perceived need for a reasonable accommodation, DEFENDANT GUARDIAN would not have wrongfully terminated or suspended her employment.

144. DEFENDANTS conduct was motivated, in whole or in part, on PLAINTIFF'S disabilities, caretaker responsibilities, and/or request for reasonable accommodations.

145. DEFENDANTS also discriminated and retaliated against PLAINTIFF by summarily demoting PLAINTIFF.

146. DEFENDANT GUARDIAN had no good-faith business justification for their actions against PLAINTIFF.

147. GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by assuming that PLAINTIFF was disabled or had a disability, and then by taking adverse employment actions against PLAINTIFF based on said perception.

148. GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by assuming that PLAINTIFF'S son was disabled or had a disability, and then by taking adverse employment actions against PLAINTIFF based on said perception.

149. GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by failing to engage in the interactive process with PLAINTIFF, to determine if a reasonable accommodation was necessary.

150. DEFENDANT GUARDIAN supported, condoned, and ratified the unlawful discriminatory conduct of its officers, directors, representatives, and DEFENDANT

RONAN, when it wrongfully terminated and/or suspended PLAINTIFF.

151.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

152.   PLAINTIFF has further experienced severe emotional and physical distress.

153.   As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *SECOND* CAUSE OF ACTION FOR *RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT (*Against DEFENDANT GUARDIAN*)

154.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

155.   The ADA prohibits retaliation, interference, coercion, or intimidation against employee, who engages in protected activity.

156.   42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or shearing under the chapter.

> Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her or her having exercised or enjoyed, or on account of her or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the chapter.

157.  DEFENDANTS violated the section as set forth herein.

158.  GUARDIAN DEFENDANTS were on notice of PLAINTIFF'S disabilities.

159.  PLAINTIFF suffers from anxiety, depression and other mental illnesses.

160.  GUARDIAN DEFENDANTS were aware that PLAINTIFF suffers from anxiety, depression, and other mental illnesses.

161.  GUARDIAN DEFENDANTS' unreasonable excuse to justify terminating or suspending PLAINTIFF'S employment was discriminatory and pretextual.

162.  PLAINTIFF engaged in protected activity by informing GUARDIAN DEFENDANTS – specifically DEFENDANT RONAN -- of her disabilities.

163.  PLAINTIFF engaged in protected activity by informing GUARDIAN DEFENDANTS – specifically DEFENDANT RONAN -- of her son's disabilities and caretaker issues.

164.  GUARDIAN DEFENDANTS were on notice that reasonable accommodation should be made for PLAINTIFF.

165.  GUARDIAN DEFENDANTS engaged in no good faith interactive process to see how/if PLAINTIFF could be accommodated for her known disabilities.

166.  GUARDIAN DEFENDANTS did not make any reasonable accommodation for PLAINTIFF.

167.  GUARDIAN DEFENDANTS retaliated against PLAINTIFF by terminating her employment immediately after and while PLAINTIFF was engaged in protected activities.

168.  GUARDIAN DEFENDANTS retaliated against PLAINTIFF by terminating or suspending her employment due to her disabilities.

169.  GUARDIAN DEFENDANTS retaliated against PLAINTIFF by terminating or suspending her employment due to her son's disabilities.

170.  But for PLAINTIFF'S disabilities, whether actual and/or perceived, and/or need for a

reasonable accommodation, GUARDIAN DEFENDANTS would not have terminated or suspended her employment.

171.  But for PLAINTIFF'S son's disabilities, whether actual and/or perceived, and/or need for a reasonable accommodation, GUARDIAN DEFENDANTS would not have terminated or suspended her employment.

172.  GUARDIAN DEFENDANTS had no good-faith business justification to terminate or suspend PLAINTIFF.

173.  GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF following the disclosure of her mental impairments, which qualify as disabilities within the meaning of the ADA.

174.  GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of PLAINTIFF'S son's mental impairment which qualifies as a disability within the meaning of the ADA.

175.  GUARDIAN DEFENDANTS supported, condoned and ratified the unlawful discriminatory conduct of its officers, directors, representatives, DEFENDANT RONAN when he terminated or suspended Plaintiff.

176.  As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of retirement benefits, the loss of a salary/pay, special damages, loss of benefits, loss of pension and retirement benefits and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

177.  PLAINTIFF has further experienced severe emotional and physical distress.

178.  As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum

award of damages under this law.

## AS A *THIRD* CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

179.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this complaint.

180.   New York State Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an
> employer or licensing agency, because of an individual's age, race,
> creed, color, national origin, sexual orientation, military status, sex,
> disability, predisposing genetic characteristics, marital status, or
> domestic violence victim status, … to discriminate against such
> individual in compensation or in terms, conditions or privileges of
> employment.

181.   PLAINTIFF was subjected to discrimination and retaliation at DEFENDANT

GUARDIAN as alleged above.

182.   GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by

discriminating against PLAINTIFF because of her disabilities, whether actual and/or

perceived, and due to her association with a person with disabilities.

183.   PLAINTIFF was discriminated against and subjected to a hostile work environment and/or

a workplace that was permeated with adverse employment actions, retaliation, summary

demotions, differential treatment, selective supervision, selective enforcement of rules,

verbal and physical harassment, abuse, wrongful termination, suspension and other

discriminatory acts.

184.   PLAINTIFF complained about the discriminatory abuse she faced at the hands of her

supervisor and said complaint(s) were futile and ignored.

185.   Instead, PLAINTIFF was further subjected to a retaliatory hostile working environment,

termination, adverse employment action, and other unreasonable acts due to her

disabilities, whether actual and/or perceived.

186.   DEFENDANT GUARDIAN perceived PLAINTIFF, as well as her child, as having disabilities.

187.   PLAINTIFF would have been able to complete the duties of her job with or without a reasonable accommodation.

188.   But for PLAINTIFF'S (and son's) disabilities -- whether actual and/or perceived -- and/or perceived need for a reasonable accommodation, DEFENDANT GUARDIAN would not have wrongfully terminated or suspended her employment.

189.   Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT GUARDIAN.

190.   DEFENDANT GUARDIAN had no good-faith business justification for their actions against PLAINTIFF.

191.   GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by assuming that PLAINTIFF was disabled or had a disability, and then by taking adverse employment actions against PLAINTIFF based on said perception.

192.   GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice by failing to engage in the interactive process with PLAINTIFF, to determine if a reasonable accommodation was necessary.

193.   DEFENDANT GUARDIAN engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of her disabilities, whether actual and/or perceived, or due to her association with a person with disabilities.

194.   DEFENDANT GUARDIAN failed/refused to engage in any interactive process to determine how/if PLAINTIFF could be accommodated.

195.   DEFENDANT GUARDIAN supported, condoned, and ratified the unlawful

discriminatory conduct of its officers, directors, representatives, including DEFENDANT RONAN, when it wrongfully terminated/suspended PLAINTIFF.

196.   DEFENDANT GUARDIAN is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

197.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

198.   PLAINTIFF has further experienced severe emotional and physical distress.

199.   GUARDIAN DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

200.   As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A FOURTH CAUSE OF ACTION FOR *RETALIATION* UNDER NEW YORK STATE EXECUTIVE LAW

201.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

202.   New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

203.   PLAINTIFF complained about the discriminatory abuse she faced at the hands of her

supervisor, DEFENDANT RONAN, and said complaints were ignored.

204. Instead, PLAINTIFF was further subjected to adverse employment actions, increased scrutiny, verbal abuse, differential treatment, humiliation, demotions, suspensions, refusals to promote and wrongful termination.

205. PLAINTIFF was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT GUARDIAN.

206. GUARDIAN DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

207. Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT GUARDIAN.

208. At all times, DEFENDANT GUARDIAN was aware and/or had actual and constructive notice of its hostile work environment and took no action to abate or correct same.

209. GUARDIAN DEFENDANTS retaliated against PLAINTIFF, for engaging in a protected activity.

210. DEFENDANT GUARDIAN'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by GUARDIAN DEFENDANTS in any regard - to the detriment of PLAINTIFF.

211. But for DEFENDANT RONAN'S position at DEFENDANT GUARDIAN, GUARDIAN DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

212. GUARDIAN DEFENDANTS had no valid business justification for the retaliatory actions taken against PLAINTIFF following her engagement in protected activity.

213. PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and

emotionally distressed.

214.   DEFENDANT GUARDIAN is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

215.   As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

216.   GUARDIAN DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

217.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A *FIFTH* CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW (*Aider and Abettor Liability Against DEFENDANT RONAN* and DEFENDANT MCGARRITY)

218.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

219.   New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

220.   DEFENDANT RONAN utilized his position/status as a manager to subject PLAINTIFF to unlawful termination and retaliation.

221.   DEFENDANT MCGARRITY received a complaint from PLAINTIFF and PLANTIFF faced further retaliation soon thereafter.

222. DEFENDANTS RONAN and MCGARRITY, acted pursuant to their authorities as managers and supervisors at DEFENDANT GUARDIAN.

223. DEFENDANTS RONAN and MCGARRITY, engaged in an unlawful discriminatory practices by discriminating against PLAINTIFF because of her disabilities, whether actual and/or perceived, and/or stated need for a reasonable accommodation.

224. But for PLAINTIFF'S disabilities and/or association with a person with disabilities, whether actual and/or perceived, and/or need for an accommodation for medical purposes, DEFENDANT RONAN would not have terminated/suspended her employment.

225. DEFENDANTS RONAN and MCGARRITY, who serve in management for DEFENDANT GUARDIAN and with knowledge of its policies, knew or should have known that their actions (or lack thereof) violated policies and rules, as well as PLAINTIFF'S individual rights.

226. DEFENDANTS RONAN and MCGARRITY had no good faith business justification for his actions against PLAINTIFF.

227. DEFENDANTS RONAN and MCGARRITY aided and abetted the discriminatory conduct of their employer DEFENDANT GUARDIAN.

228. DEFENDANTS RONAN and MCGARRITY, each collectively and individually supported, condoned aided and abetted the discriminatory and retaliatory conduct of their principal, DEFENDANT GUARDIAN, against PLAINTIFF.

229. As a result of DEFENDANT RONAN'S actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

230. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails,

and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

231.     PLAINTIFF has further experienced severe emotional, mental, and physical distress.

232.     As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *SIXTH* CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

233.     PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

234.     The Administrative Code of the City of New York § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person, **to refuse to hire or employ or to bar or to discharge from employment** such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

235.     GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of disabilities, whether actual and/or perceived, and/or her status as a caretaker of an individual with disabilities.

236.     PLAINTIFF was subjected to discrimination and retaliation at DEFENDANT GUARDIAN as alleged above.

237.     PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with disability bias, adverse employment actions, retaliation, summary demotions, verbal threats and abuse, differential treatment, selective supervision, selective

enforcement of rules, selective disciplines, harassment, abuse, wrongful termination, suspension and other discriminatory acts.

238.   PLAINTIFF complained about the discriminatory abuse she faced at the hands of her supervisor and said complaint(s) were futile and ignored.

239.   Instead, PLAINTIFF was further subjected to a retaliatory hostile working environment, termination, adverse employment action, and other unreasonable acts.

240.   PLAINTIFF was then wrongfully terminated or suspended in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT GUARDIAN.

241.   At all times, DEFENDANT GUARDIAN was aware and/or had actual and constructive notice of its hostile work environment against PLAINTIFF and took no action to abate or correct same.

242.   DEFENDANT GUARDIAN perceived PLAINTIFF as having a disability, which required a reasonable accommodation.

243.   PLAINTIFF would have been able to complete the duties of her job with or without reasonable accommodation.

244.   But for PLAINTIFF'S disabilities and association with a person with disabilities - whether actual and/or perceived - and/or need for a reasonable accommodation, DEFENDANT GUARDIAN would not have wrongfully terminated her employment.

245.   DEFENDANT GUARDIAN had no good-faith business justification for their actions against PLAINTIFF.

246.   DEFENDANT GUARDIAN failed/refused to engage in any interactive process to determine how PLAINTIFF could be accommodated.

247.   Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT GUARDIAN.

248.   DEFENDANT GUARDIAN supported, condoned, and ratified the unlawful discriminatory conduct of its officers, directors, representatives, and DEFENDANT RONAN when it wrongfully terminated/suspended PLAINTIFF.

249.   DEFENDANT GUARDIAN is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

250.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

251.   PLAINTIFF has further experienced severe emotional and physical distress.

252.   GUARDIAN DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

253.   As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**AS A NINTH CAUSE OF ACTION FOR *RETALIATION*
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

254.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

255.   The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . ."

256.   GUARDIAN DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of GUARDIAN DEFENDANTS.

257.   PLAINTIFF complained about the discriminatory abuse she faced at the hands of her supervisor, DEFENDANT RONAN, said complaints were ignored.

258.   Instead, PLAINTIFF was further subjected to adverse employment actions, increased scrutiny, differential treatment, verbal abuse, humiliation, demotions, suspension and wrongful termination.

259.   PLAINTIFF was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT GUARDIAN.

260.   GUARDIAN DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

261.   At all times, DEFENDANT GUARDIAN was aware and/or had actual and constructive notice of its hostile work environment and took no action to abate or correct same.

262.   Instead, GUARDIAN DEFENDANTS retaliated against PLAINTIFF, who engaged in a protected activity, while allowing the perpetrators to escape discipline.

263.   DEFENDANT GUARDIAN'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by GUARDIAN DEFENDANTS in any regard - to the detriment of PLAINTIFF.

264.   But for DEFENDANT RONAN'S position at DEFENDANT GUARDIAN, GUARDIAN DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory

treatment alleged above.

265.  GUARDIAN DEFENDANTS had no valid business justification for the retaliatory actions taken against PLAINTIFF following her engagement in protected activity.

266.  PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

267.  DEFENDANT GUARDIAN is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

268.  As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of her rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

269.  GUARDIAN DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

270.  PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS A *SEVENTH* CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(*Aider and Abettor Liability Against* DEFENDANTS RONAN and MCGARRITY)**

271.  PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

272.  The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

273.  DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful and retaliatory conduct.

274.   DEFENDANT RONAN utilized his position/status as a manager to subject PLAINTIFF to unlawful termination and retaliation.

275.   DEFENDANT MCGARRITY received a complaint from PLAINTIFF and PLANTIFF faced further retaliation soon thereafter.

276.   DEFENDANTS RONAN and MCGARRITY, acted pursuant to their authorities as managers and supervisors at DEFENDANT GUARDIAN.

277.   DEFENDANTS RONAN and MCGARRITY, engaged in an unlawful discriminatory practices by discriminating against PLAINTIFF because of her disabilities, whether actual and/or perceived, and/or stated need for a reasonable accommodation.

278.   But for PLAINTIFF'S disabilities and/or association with a person with disabilities, whether actual and/or perceived, and/or need for an accommodation for medical purposes, DEFENDANT RONAN would not have terminated/suspended her employment.

279.   DEFENDANTS RONAN and MCGARRITY, who serve in management for DEFENDANT GUARDIAN and with knowledge of its policies, knew or should have known that their actions (or lack thereof) violated policies and rules, as well as PLAINTIFF'S individual rights.

280.   DEFENDANTS RONAN and MCGARRITY had no good faith business justification for his actions against PLAINTIFF.

281.   DEFENDANTS RONAN and MCGARRITY aided and abetted the discriminatory conduct of their employer DEFENDANT GUARDIAN.

282.   DEFENDANTS RONAN and MCGARRITY, each collectively and individually supported, condoned aided and abetted the discriminatory and retaliatory conduct of their

principal, DEFENDANT GUARDIAN, against PLAINTIFF.

283.   As a result of DEFENDANT RONAN'S actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

284.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

285.   PLAINTIFF has further experienced severe emotional, mental, and physical distress.

286.   As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

## PUNITIVE DAMAGES

287.   GUARDIAN DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

288.   As such, punitive damages are appropriate as a result of GUARDIAN DEFENDANTS' above-described conduct and PLAINTIFF demands Punitive Damages as against all GUARDIAN DEFENDANTS, jointly and severally.

## JURY DEMAND

289.   PLAINTIFF hereby demands a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against the GUARDIAN DEFENDANTS:

A.   Declaring that GUARDIAN DEFENDANTS engaged in unlawful employment practices prohibited by the ADA, the NYSHRL, and the NYCHRL;

B.      Awarding damages to PLAINTIFF resulting from GUARDIAN DEFENDANTS' unlawful and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.      Awarding PLAINTIFF compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.      Reinstating PLAINTIFF to her position as authorized by the statutes herein;

E.      Awarding PLAINTIFF punitive damages;

F.      Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.      Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just and proper to remedy the GUARDIAN DEFENDANTS' unlawful employment practices.

Dated:  New York, New York
        June 1, 2023

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**


                        By:     _____
                                Gregory Calliste, Jr., Esq.
                                Alexandria Jean Pierre, Esq.
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 430
                                New York, New York 10006
                                T: (212) 248-7431
                                F: (212) 901 - 2107
                                gcalliste@tpglaws.com
                                ajean-pierre@tpglaws.com